■ In the Matter of CHUBB GROUP OF INSURANCE COMPANIES, Respondent, v BEVERLY WILLIAMS, Respondent, and PROGRESSIVE CASUALTY INSURANCE COMPANY, Appellant. [789 NYS2d 66]—

In a proceeding pursuant to CPLR article 75 to permanently stay arbitration of an uninsured motorist claim, Progressive Ca-

sualty Insurance Company appeals (1) from an order of the Supreme Court, Westchester County (Friedman, J.H.O.), dated October 17, 2003, which, after a hearing, granted the petition and (2), as limited by its brief, from so much of an order of the same court dated December 12, 2003, as, upon reargument and renewal, adhered to the prior determination.

Ordered that the appeal from the order dated October 17, 2003, is dismissed, as that order was superseded by the order dated December 12, 2003, made upon reargument and renewal; and it is further,

Ordered that the order dated December 12, 2003, is affirmed insofar as appealed from; and it is further,

Ordered that one bill of costs is awarded to the petitioner-respondent.

Pursuant to the provision of Vehicle and Traffic Law § 313 in effect at the time of the purported cancellation of a policy of insurance providing coverage to James M. Dobbs, Jr. (see Vehicle and Traffic Law § 313 [2] [a]), Progressive Casualty Insurance Company (hereinafter Progressive) was required to file a notice of cancellation with the Commissioner of the New York State Department of Motor Vehicles. The record establishes that Progressive did not comply with this provision. Thus, the termination of coverage by Progressive was not effective with respect to the claim made by Beverly Williams arising out of an automobile accident which occurred on August 24, 2002 (see Vehicle and Traffic Law § 313 [2] [a]; Matter of AIU Ins. Co. v Mensah, 307 AD2d 921, 922 [2003]; Matter of Merchants & Bus. Men's Mut. Ins. Co. v Williams, 295 AD2d 614, 615 [2002]). Accordingly, the Supreme Court properly granted the petition to permanently stay arbitration pursuant to the uninsured motorist provision of the policy issued by the petitioner.

As indicated by our dissenting colleague, during the time period in question, the Department of Motor Vehicles (hereinafter the DMV) had issued certain regulations imposing a "blackout" period for electronic transmissions, including cancellations (see 15 NYCRR 34.7 [a]). However, in our opinion, this did not eliminate the requirement imposed under Vehicle and Traffic Law § 313 (2) (a). We note that even after the electronic system was converted to the new system and the "blackout" period ended, Progressive never notified the DMV of the purported cancellation of the subject policy prior to the accident at issue in this case. The system conversion process apparently ended in September 2000. The subject accident occurred close to two years thereafter, on August 24, 2002. However, it was not until November 2002, or three months after the accident, that Pro-

gressive first informed the DMV that the policy was not in effect. Schmidt, J.P., Luciano and Rivera, JJ., concur.

Santucci, J., dissents, in part, and votes to dismiss the appeal from the order dated October 17, 2003, reverse the order dated December 12, 2003, insofar as appealed from, vacate the order dated October 17, 2003, deny the petition, and dismiss the proceeding, with the following memorandum: In my opinion, the petition to stay arbitration of an uninsured motorist claim should have been denied. As stated by the majority, Vehicle and Traffic Law § 313 (2) (a) requires that an insurer file a notice of termination with the Commissioner of the New York State Department of Motor Vehicles within 30 days following the effective date of cancellation. In the case at bar, the Supreme Court concluded, and the majority agrees, that Progressive Casualty Insurance Company (hereinafter Progressive) did not comply with this provision and thus it did not effectively cancel the subject policy of insurance prior to the date of the accident.

However, during the time period in question, the Department of Motor Vehicles (hereinafter the DMV) was in the process of converting its record-keeping system. In conjunction with converting this system of electronic reporting, the DMV issued certain regulations which stated in pertinent part that the "DMV shall not accept old format FSCP tapes [the prior system] after noon on May 19, 2000" and there "will be a period between FSCP tape cut-off and initial loading where electronic transactions, *including cancellations,* cannot be submitted by an insurance company or servicing agent to DMV" (15 NYCRR 34.7 [a] [emphasis added]). The regulations further stated that "[s]ince IIES [the new system] begins with the reporting of insured policyholders and vehicles, *cancellations that may have occurred during the period between the creation date of the last FSCP tape and the creation date of the successful IIES initial load tape shall not be reported to DMV*" (15 NYCRR 34.7 [a] [emphasis added]). Indeed, as per the affidavit of a DMV manager: "[i]f the carrier had cancelled a policyholder's policy between the DMV's acceptance of the carrier's last FSCP (old format) tape and the creation date of the carrier's initial load IIES tape, *the Insurance carrier was not required to notify DMV*" (emphasis added). In this case, Progressive's purported cancellation of the subject policy occurred during the period when, according to the DMV's own regulations, the insurer was not required to notify the DMV of such termination. Accordingly, it was error to grant the petition to stay arbitration pursuant to the uninsured motorist provision of the policy on the ground that Progressive failed to properly cancel in accordance with Vehicle and Traffic Law § 313 (a) (2).